IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE CONTINENTAL PILOTS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE AND CONTINENTAL AIRLINES, INC., | § § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL NO. _____ |
| GLENN BROWN, BETSY D. BROWN, ROBERT DUBOISE, CYNTHIA DUBOISE, JAY ELLIS, CAROL ELLIS, EDDIE LINDSEY, DELORES N. LINDSEY, CHRISTINE LOCKERT, JAMES LOCKERT, DOUGLAS SCHULL, MARJORIE SCHULL, JAMES VIAL, BRENDA M. VIAL, CINDY ERNST, JAMES ERNST, ROBERT PFLIBSEN, SHERRI PFLIBSEN | § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT
AND APPLICATION FOR DECLARATORY AND
INJUNCTIVE RELIEF**

Plaintiffs, The Continental Pilots Retirement Plan Administrative Committee and

Continental Airlines, Inc., on behalf of The Continental Pilots Retirement Plan, and Continental

Airlines, Inc. on its own behalf (collectively "Plaintiffs"), file this Original Complaint and

Application for Declaratory and Injunctive Relief against Defendants Glenn Brown, Betsy D.

Brown, Robert Duboise, Cynthia Duboise, Jay Ellis, Carol Ellis, Eddie Lindsey, Delores

N. Lindsey, Christine Lockert, James Lockert, Douglas Schull, Marjorie Schull, James Vial,

Brenda M. Vial, Cindy Ernst, James Ernst, Robert Pflibsen and Sherri Pfilbsen (collectively the

"Defendants").  This action is brought by the fiduciaries of an employee pension benefit plan to recover plan assets improperly distributed, as a result of a fraudulent or otherwise wrongful scheme, to Defendants, who are former participants and beneficiaries (who represent themselves to be Alternate Payees under ERISA).  Plaintiffs seek a declaratory order and final judgment requiring Defendants to make restitution of the funds in issue to the pension benefit plan. Plaintiffs also seek injunctive relief prohibiting Defendants from dissipating the improperly disbursed plan assets in order to ensure that appropriate equitable relief may be available to Plaintiffs upon entry of judgment.  Continental Airlines, Inc. also sues for declaratory relief with regard to controversies that exist between it and certain of the Defendants who are its former employees concerning the terminations of their employment and their employment rights under ERISA.

## I.
## JURISDICTION AND VENUE

1.      This is a civil action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., 28 U.S.C. §1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      Plaintiffs bring this cause of action under 29 U.S.C. § 1132(a)(3) (section 502(a)(3) of ERISA), which authorizes suits by fiduciaries of benefit plans to enforce provisions of ERISA or plan terms.  Plaintiffs sue to enforce the fiduciary duty provisions of ERISA, as stated in 29 U.S.C. § 1104, including those mandating that benefit plans be administered consistent with their governing documents, other requirements of ERISA, and requirements of the Internal Revenue Code and related regulations pertaining to tax qualified status.  Plaintiffs seek appropriate equitable relief against Defendants for fraudulently or otherwise wrongfully

obtained – and therefore improperly paid – distributions from The Continental Pilots Retirement Plan.

3.    Continental Airlines, Inc. further sues for a declaration that its discharges of certain of Defendants from their employment did not violate section 510 of ERISA, 29 U.S.C. §1140.

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 1132(e)(1) (ERISA), 28 U.S.C. § 1331 and 28 U.S.C. § 2201 (Declaratory Judgment Act).

5.    Venue is proper in the Southern District of Texas – Houston Division, pursuant to 29 U.S.C. § 1132(e)(2), as The Continental Pilots Retirement Plan is administered in Houston, Texas, Defendants' wrongful conduct took place, at least in part, in the Southern District of Texas, and at least one of the Defendants resides within the Southern District of Texas.

## II.
## PARTIES

6.    Plaintiff The Continental Pilots Retirement Plan Administrative Committee ("Administrative Committee"), sitting in Houston, Texas, is a named fiduciary of The Continental Pilots Retirement Plan (the "Plan"), an employee pension benefit plan under § 1002(2)(A) of ERISA, administered out of the Houston, Texas location of Continental Airlines, Inc., and also a fiduciary according to § 1002(16)(A) of ERISA.  As a fiduciary, the Administrative Committee is charged under 29 U.S.C. § 1104 with administering the Plan in a manner compliant with ERISA, the provisions of the Internal Revenue Code (and related regulations) that govern the tax qualified status of the Plan, and the governing documents of the Plan.

7.    Plaintiff Continental Airlines, Inc. ("Continental") is a corporation organized and existing under the laws of the State of Delaware, which maintains its principal place of business

in Houston, Texas. Continental is the Plan sponsor and also a fiduciary of the Plan. Continental is charged under 29 U.S.C. § 1104 with maintaining the Plan in a manner compliant with ERISA and the provisions of the Internal Revenue Code (and related regulations) that govern the tax qualified status of the Plan. Additionally, Continental employed certain of Defendants who participated in the fraudulent scheme and sham transactions which are the subjects of this action and who have since been discharged from their employment.

8.     Defendants are (a) former pilot-employee participants in the Plan ("Defendant-Pilots"), who themselves, or whose then ex-spouses, submitted domestic relations orders ("DROs") to the Plan which requested immediate, lump sum distributions of 100 percent (or in one case 90 percent) of the pilot-employee participants' accrued benefits under the Plan; and (b) the Defendant-Pilots' spouses (or, if not remarried, ex-spouses) ("Defendant-Spouses").

9.     Defendant Glenn Brown is an individual residing at 3875 40th Way South, St. Petersburg, Florida 33711. Defendant Glenn Brown may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

10.     Defendant Betsy D. Brown is an individual residing at 3875 40th Way South, St. Petersburg, Florida 33711. Defendant Betsy D. Brown may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

11.     Defendant Robert Duboise is an individual residing at 22601 Wakefield St., Mission Viejo, California 92692. Defendant Robert Duboise may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

12.     Defendant Cynthia Duboise is an individual residing at 22601 Wakefield St., Mission Viejo, California 92692. Defendant Cynthia Duboise may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

13.     Defendant Jay Ellis is an individual residing at 2605 Admiral Dr., League City, Texas 77573.  Defendant Jay Ellis may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

14.     Defendant Carol Ellis is an individual residing at 2605 Admiral Dr., League City, Texas 77573.  Defendant Carol Ellis may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

15.     Defendant Eddie Lindsey is an individual residing at 3903 Treaschwig Road, Humble, Texas 77338.  Defendant Eddie Lindsey may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

16.     Defendant Delores N. Lindsey is an individual residing at 3903 Treaschwig Road, Humble, Texas 77338.  Defendant Delores N. Lindsey may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

17.     Defendant Christine Lockert is an individual residing at 1145 Kimbrough Road, Ashland City, Tennessee 37015.  Defendant Christine Lockert may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

18.     Defendant James Lockert is an individual residing at 1145 Kimbrough Road, Ashland City, Tennessee 37015.  Defendant James Lockert may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

19.     Defendant Douglas Schull is an individual residing at 44 Hier Lane, Castle Rock, Colorado 80109.  Defendant Douglas Schull may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

20.     Defendant Marjorie Schull is an individual residing at 44 Hier Lane, Castle Rock, Colorado 80109.  Defendant Marjorie Schull may be served at her residence or any other place

where she may be found pursuant to 29 U.S.C. § 1132(e).

21.  Defendant James Vial is an individual residing at 25 Longhorn Loop Court, New Waverly, Texas 77358.  Defendant James Vial may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

22.  Defendant Brenda M. Vial is an individual residing at 25 Longhorn Loop Court, New Waverly, Texas 77358.  Defendant Brenda M. Vial may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

23.  Defendant Cindy Ernst is an individual residing at 200 Arnica Lane, Silverthorne, Colorado 80498.  Defendant Cindy Ernst may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

24.  Defendant James Ernst is an individual residing at 200 Arnica Lane, Silverthorne, Colorado 80498.  Defendant James Ernst may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

25.  Defendant Robert Pflibsen is an individual residing at 206 Alta Mesa Drive, Vista, California 92084.  Defendant Robert Pflibsen may be served at his residence or any other place where he may be found pursuant to 29 U.S.C. § 1132(e).

26.  Defendant Sherri Pflibsen is an individual residing at 206 Alta Mesa Drive, Vista, California 92084.  Defendant Sherri Pflibsen may be served at her residence or any other place where she may be found pursuant to 29 U.S.C. § 1132(e).

### III.
### SUMMARY OF PLAINTIFFS' CASE

27.  Defendant-Pilots conspired with their respective Defendant-Spouses, through fraud or other wrongful conduct involving the deceptive manipulation of divorce laws and courts, to access funds (their "pension benefits") held in trust in the Plan, which provides a

defined benefit to participants and beneficiaries, without retiring or otherwise severing their active employment with Continental. The Plan and federal tax regulations governing defined benefit pension plans prohibit participants, such as the Defendant-Pilots, from withdrawing any portion of their pension benefits, except upon reaching retirement eligibility and separating from active employment. Defendant-Pilots and their respective Defendant-Spouses circumvented this requirement by obtaining, through deception and collusion, divorce decrees from the courts of the various states in which they reside. As part of those proceedings, they typically entered into uncontested allocations of all or a portion of the marital property, which included, in all cases, assignment of 100 percent (or, in one case, 90 percent) of the pilots' benefits in the Plan to the ex-spouses. These Defendants then obtained Domestic Relations Orders ("DROs") from the courts granting their divorces which provided for the transfer of the pilots' benefits in the Plan to the ex-spouses and served those DROs on Continental or the Administrative Committee with requests that the entire value (or in the one case 90 percent) of the pilots' pension benefits be disbursed immediately in a lump sum to the ex-spouses. ERISA generally requires the plan fiduciary to disburse the designated percentage of the plan participant's benefit to the person identified in the DRO, as an "Alternate Payee," **provided** the fiduciary determines that the DRO meets certain requirements of ERISA. These requirements include a determination, to be made by a plan fiduciary, that the DRO is "qualified." 29 U.S.C. § 1056(d)(3)(D). A "qualified" DRO ("QDRO") may not provide "any type or form of benefit, or any option, not otherwise provided by the plan." Id. ERISA explicitly prohibits assignment of plan benefits, including under a DRO, unless the court order is "qualified." 29 U.S.C. § 1056.

28. The divorces, irrespective of their facial validity under the laws of the states in which they were obtained, were subterfuges or sham transactions in that the Defendant-Pilots

and their respective Defendant-Spouses had no intention of disassociating as marital partners but obtained the divorce decrees and related DROs for the purpose of providing the Defendant-Pilots access to lump sum distributions of their pension benefits without their having to retire or otherwise separate from active employment. As such, the divorce decrees were obtained for the purpose of accessing an "in-service" lump sum distribution which is a "form of benefit" or benefit "option" not otherwise available under the Plan. Accordingly, such actions of the Defendant-Pilots and Defendant-Spouses constituted sham transactions and a fraud or other wrongful deception on the Plan. Indeed, all or almost all of the Defendant-Pilots and their respective Defendant-Spouses remarried after obtaining lump sum distributions of their pension benefits, while the pilots remained actively employed by Continental.

29. Plaintiffs came to suspect this fraudulent scheme and commenced investigations, consistent with their fiduciary responsibilities, of those requests for lump sum distributions where the accompanying DROs awarded 100 percent (or in one instance, 90 percent) of the pilots' benefits under the Plan to the ex-spouses. Plaintiffs concluded, with respect to each of the Defendant-Pilots, that their divorce decrees had been obtained for the purpose of gaining access to "in-service" lump sum distributions of their pension benefits, through their respective spouses, in circumvention of the requirement of the Plan that they retire or otherwise sever active employment as a condition of receiving those benefits. As a consequence, each of the Defendant-Pilots either has been involuntarily terminated from employment by Continental for misconduct or has retired.[1]

---

[1] The one exception is Defendant Robert Duboise, who recanted his fraud and signed an agreement to make restitution to the Plan (and consequently was reinstated to active employment). Mr. Duboise has failed to satisfy his promise to return the distribution paid to his spouse by the Plan, and so has been joined as a defendant herein.

30.     At the time of their respective dismissals or retirements, the Defendant-Pilots would have become eligible to request lump sum distributions of their pension benefits under the Plan.  However, on information and belief, the distribution to which each of the Defendant-Pilots would have been entitled upon discharge or retirement was less than the sum of the distribution received by each respective Defendant-Spouse plus the gain or earnings on the improper early distribution pursuant to the DRO.  Thus, the Defendant-Pilots and/or Defendant-Spouses are in possession of funds, in the form of overpaid distributions of pension benefits, including ill-gotten gains or earnings on the improperly obtained early benefit distributions, that are the legal property of the Plan.  Plaintiffs' fiduciary responsibilities require that they pursue recovery of these overpayments, which were improperly disbursed as a direct result of the fraud on the Plan or other wrongful conduct perpetrated by the Defendant-Pilots and Defendant-Spouses in violation of ERISA and the clear and express terms of the Plan, for the benefit of all Plan participants and beneficiaries.  Defendant-Pilots and Defendant-Spouses have refused to return those Plan assets, and Plaintiffs bring this action to recover same.

## IV.
## FACTS

31.     The Plan is a pilot-only plan consisting of assets spun-off from The Continental Retirement Plan.  The Plan has been in effect since April 30, 2005.[2]

32.     Pursuant to Plan terms, the President of Continental appointed the Administrative Committee to serve as a named fiduciary under the Plan.  This fiduciary appointment vests the

---

[2] The Plan is collectively bargained between Continental and its pilots, as represented by their union, the Air Line Pilots Association, International.  Effective May 31, 2005, the Plan was frozen as to future benefit accruals.  At that time, Continental began providing employer-contributed retirement benefits to pilots under the Continental Pilots Defined Contribution Plan.

Administrative Committee with the discretionary authority to, among other duties, administer the Plan, construe all of its provisions, determine questions of eligibility, and settle disputes.

33.     As fiduciaries of the Plan, Continental and the Administrative Committee have an obligation under ERISA to discharge their duties "solely in the interest of the [Plan's] participants and beneficiaries[,] [ ] for the exclusive purpose of: providing benefits... [and] defraying reasonable expenses..." 29 U.S.C. § 1104(a)(1). As part of the fulfillment of these statutory fiduciary duties, Section 9.22 of the Plan requires that Continental and the Administrative Committee "take appropriate steps to recover [ ] amounts from the individuals who have received [ ] overpayments...." The Department of Labor has also taken the position that, as part of their statutory duties under ERISA, fiduciaries <u>must</u> attempt to recoup erroneous overpayments from participants and beneficiaries.[3] Accordingly, Plaintiffs take the affirmative step of prosecuting this action to ensure that Plan assets are not being fraudulently or otherwise improperly withdrawn so that such assets remain available on equal terms for distribution to all Plan participants and beneficiaries pursuant to the provisions of the Plan.

34.     The Plan, as a result of the high compensation levels of Continental's senior pilots and its significant benefit accrual formula, historically has provided a substantial benefit for eligible pilot employees upon retirement. These pension benefits can be paid in lump sum distributions upon separation from active employment (provided the pilot has reached minimum retirement age), and the amounts can reach up to $900,000 per individual. However, both Internal Revenue Code provisions and regulations governing the tax deferred status of pension plans and the terms of the Plan itself prohibit pilots from withdrawing any portion of their accrued benefit prior to retirement or other separation from active employment. Internal Revenue Code of 1986, as amended ("Internal Revenue Code"), 26 U.S.C. § 401(a); Treas. Reg.

---

[3] DOL Opinion Ltr. 77-08, 1977 WL 5394 (Apr. 4, 1977).

Section 1.401-1(b)(1)(i); Treas. Reg. Section 1.401(a)-1(b)(1)(i) and Sections 4.4, 4.5, 6.3 and 9.4 of the Plan.

35.     The benefits provided by the Plan are insured by the Pension Benefit Guaranty Corporation ("PBGC"). However, the PBGC generally limits the maximum benefit guarantee to a significantly lower amount than those amounts routinely paid out by the Plan and does not provide lump sum distributions of such insured amounts. Instead, the PBGC pays benefits in periodic annuity payments over the remaining life of the participant and spouse, if applicable.

36.     As provided for by ERISA, in the event of a valid divorce or legal separation between a pilot and his or her spouse, the Plan allows the transfer of an individual pilot participant's pension benefits to an "alternate payee" in accordance with the provisions of a DRO, which is typically entered by a domestic relations court, that is subsequently determined by the Administrative Committee to be "qualified."

37.     In such a case, once a pilot participant becomes eligible for retirement (including early retirement), the pilot's ex-spouse, as alternate payee, may then submit the DRO to the Plan for payment (including in a lump sum) of the percentage of the pilot's accrued benefit to be transferred to the ex-spouse as specified in the DRO. The Plan Administrator reviews the DRO to determine whether it meets the requirements for a DRO, and if so, for a "qualified" DRO, under both the Internal Revenue Code and ERISA. If the Plan Administrator determines that the DRO satisfies each of these sets of requirements, the DRO is determined to be "qualified" (a "QDRO"), and the Plan then pays the designated Plan benefits to the named alternate payee pursuant to the terms of the QDRO and the Plan. However, ERISA mandates that a QDRO may not provide "any type or form of benefit, or any option, not otherwise provided by the plan." 29 U.S.C. § 1056(d)(3)(D).

38. Beginning in mid-2005, in the wake of financial difficulties in the airline industry, certain senior Continental pilots who had satisfied the Plan's early retirement age and service requirements (making them eligible to receive a lump sum distribution of their pension benefits under the Plan upon their severance of employment), on information and belief, became concerned about the possibility that the PBGC would assume control of the Plan (as had occurred recently with other domestic airlines). Such a change in control would result in the pilots' benefits, upon retirement, being payable only in periodic annuity payments by the PBGC over the remaining life of the pilot, rather than in a single, lump sum payment. Moreover, in such situations, the pilots' benefits generally would be reduced to amounts within the PBGC maximum benefit guarantee, which are significantly below the benefit amounts anticipated by such pilots. On information and belief, some of these pilots determined that, if they merely obtained "divorces" and agreed to an award of 100 percent of their Plan benefits to their soon to be ex-spouses via an uncontested DRO, the ex-spouses could then seek, as alternate payees, immediate lump sum distributions of 100 percent of the pilots' pension benefits from the Plan – *distributions which these pilots could not otherwise obtain without incurring a permanent severance of their employment with Continental*. Thus, by obtaining such sham "divorces" and associated DROs assigning 100 percent of their benefits under the Plan to their ex-spouses, pilot participants could remain employed, at a substantial salary, and simultaneously gain effective access to 100 percent of their Plan benefits via a lump sum distribution of such benefits to their "ex-spouses." This deception, which amounted to a manipulation of divorce laws and the courts, effectively granted those pilots who engaged in these actions immediate access to otherwise restricted and protected Plan funds, thereby providing them a form of benefit or option with

respect to their benefit amounts not otherwise provided by the Plan and, importantly, not enjoyed by other Plan participants and beneficiaries.

39.     Beginning in late 2005, the Plan began to receive a significant number of incoming requests for qualification of DROs awarding 100 percent of pilot participants' Plan benefits to their recently divorced spouses, and seeking immediate lump sum distributions of those amounts to the ex-spouses.  At the time, Plaintiffs were unaware of any individual or concerted efforts by any pilot participants in the Plan to engage in fraudulent or other acts for the purpose of improperly gaining access to otherwise unavailable Plan benefits.  Thus, as the Plan received these DROs (which at such time appeared to comply on their faces with the formalities required by ERISA for DROs) from pilot participants' ex-spouses, they were routinely processed according to the appropriate written procedures, and determined to be "qualified" at such time, causing associated requests for 100 percent lump sum distributions of the affected Plan benefits to be paid to the ex-spouses.

40.     In mid-2007, Plaintiffs learned of the possibility that many of the pilots, who had caused 100 percent of their Plan benefits to be assigned to their ex-spouses in DROs recently submitted to the Plan, had merely temporarily dissolved their marriages through sham "divorces" – solely for the purpose of gaining access to their Plan benefits prior to legitimately becoming eligible to receive such benefit payments.  Shortly following the distribution by the Plan of the full amount of the pilot participant's benefits to the ex-spouse, the pilots and their spouses were remarrying, usually within a matter of a few or several months.

41.     Upon receipt of this alarming information, the Administrative Committee, pursuant to its fiduciary responsibilities, initiated immediate action to prevent the inappropriate and untimely distribution of Plan assets, to the exclusion of remaining Plan participants and

beneficiaries, resulting from fraudulent or deceptive manipulations by participants. Consistent with their fiduciary duties, the Administrative Committee and Continental began investigating recently received DROs – including those which had already resulted in 100 percent lump sum payments to alternate payee ex-spouses – for indications that they may have involved sham "divorces."[4] The investigations revealed that in many instances, including those involving the Defendant-Pilots and their respective Defendant-Spouses, all or several of the following facts and circumstances were present:

(a)     During the period leading up to obtaining their divorce decree, the pilot and spouse did not seek or attend any marriage or relationship counseling.

(b)     Neither the pilot nor his/her spouse was represented by legal counsel in connection with their divorce (or they were represented by the same legal counsel).

(c)     Despite the division of property agreed to in their divorce decree, the pilot and spouse never altered title, legal ownership, possession, control, signatories or beneficiaries with respect to real estate or personal property (e.g., residences, automobiles, boats, bank accounts, credit and mortgage accounts, and insurance policies).

(d)     Knowledge of the divorce was concealed from children and friends of the couple.

(e)     The spouses who are women did not change their names after the divorce decrees.

---

[4]   Department of Labor guidance, issued previously in similar circumstances, instructs that the plan administrator should investigate, where suspicions arise, whether a DRO was obtained based on fraud and, where the administrator is unable to challenge the validity of the DRO before the issuing court, proceed to determine independently whether it is "qualified" under the applicable provisions of ERISA. (Attachment A, DOL Advisory Opinion 99-13A (Sept. 29, 1999)).

(f)     The pilot and spouse had remarried after (often very shortly after) the spouse had received the lump sum distribution of the pilot's benefit from the Plan pursuant to the DRO.

42.     Additionally, in many instances, including those involving the Defendant-Pilots and their respective Defendant-Spouses, all or some of the following facts and circumstances were present, either during the couple's alleged separation or divorce or during both, and during the period following entry of the divorce decree and before their remarriage:

(g)     Both the pilot and spouse continued to live in the same household (or, if this was denied, the pilot refused to produce documentation corroborating separate residences).

(h)     The pilot continued to pay utilities and other household expenses for the marital residence and, where applicable, mortgages.

(i)     The pilot inappropriately maintained spousal benefit coverages for his or her ex-spouse under Continental's benefits plans (including health and dental coverages).

(j)     The pilot and spouse continued to travel together for recreational purposes (including, in some instances, inappropriately using flight privileges limited to Continental employees and their spouses).

(k)     The ex-spouse remained the primary beneficiary of the pilot's estate.

(l)     The pilot remained or was added as a primary beneficiary on the ex-spouse's IRA account into which the pilot's retirement plan distribution was rolled over.

43.     Significantly, at least two of the Defendant-Pilots acknowledged during the course of the investigations that they and their spouses had obtained their divorce decrees for the purpose of obtaining a lump sum distribution of their pension benefits from the Plan.

44.     As a consequence of the findings of these investigations, the Administrative Committee determined that the DROs obtained by all of the Defendant-Spouses were not "qualified" under section 206(d)(3)(D) of ERISA, 29 U.S.C. § 1506(d)(3)(D), because they were obtained fraudulently or via sham transactions for the purpose of accessing a "type or form of benefit" or an "option" with respect to a benefit "not otherwise provided by the plan." Under ERISA, those determinations are final and conclusive and reviewable only for abuse of discretion.

45.     A number of the pilots determined by the Administrative Committee to have engaged in these fraudulent practices have been discharged by Continental, either for failing to cooperate in the investigation or for pension fraud. Other pilots have resigned or retired from employment coincident with the commencement of the investigations or have recanted their actions by petitioning the issuing courts to withdraw the improperly obtained DROs. While Plaintiffs discovered these deceptions in many instances in time to prevent the requested improper distributions from the Plan, a number of such distributions, including those to Defendants, were made prior to discovery of these facts.

46.     By the time Plaintiffs were made aware of the actions of many of the pilots involved and the investigations commenced, the Plan had already distributed between $10 and $11 million in benefits, including to Defendant-Pilots and Defendant-Spouses, pursuant to the terms of their 100 percent DROs. Plaintiffs estimate that this resulted in substantial overpayments of benefits to Defendants. These overpayments, on information and belief, result from the fact that the respective values of the Defendant-Pilots' accrued benefits as of the dates of their retirements or employment terminations were less than the sums of (i) the values of those accrued benefits as of the earlier dates on which the Defendant-Spouses received the lump sum

distributions, plus (ii) the earnings or gain on those prematurely distributed benefits prior to them becoming properly payable. These overpayments represent funds which were improperly distributed to the Defendants and which continue to belong to the Plan (for the benefit of other participants and beneficiaries).

47.     Consistent with its fiduciary obligations under the Plan, the Administrative Committee has requested that each of the Defendant-Pilots and their alternate payee Defendant-Spouses return these overpayments. As of the date of the filing of this lawsuit, each of the Defendant-Pilots and Defendant-Spouses has refused or failed to return the full amount of overpaid benefits - consisting of the difference between the amount distributed prematurely pursuant to the DRO and the value of the Pilot's benefit as of the date of his or her employment termination, plus all gain or earnings on the amount of the prematurely distributed benefit until such time as it was properly payable – owed the Plan. Plaintiffs are unable to determine the amounts owed the Plan by Defendants at this time and such calculations will not be ascertainable until discovery of relevant facts has been conducted.

48.     On information and belief, each Defendant-Spouse and/or Defendant-Pilot has deposited or transferred the lump sum distribution received pursuant to their applicable DRO into a rollover IRA or other specific money/investment account over which the said Defendants have control or of which they have possession.

49.     Such a disproportionate and untimely distribution of Plan benefits has resulted in a dissipation of Plan assets, causing greater financial risk to other pilot participants and their beneficiaries who have not engaged in such fraudulent activity. Such risk may subject Plan fiduciaries to potential liability for breach of fiduciary duty to such other participants and beneficiaries in the absence of the prosecution of this civil action to recoup such wrongfully

received funds. Additionally, if such fraudulent activity and associated withdrawal of Plan assets is allowed to proceed unchecked, the resulting actuarially-unanticipated lump sum benefit distributions could cause the Plan to fail to meet required liquidity shortfall requirements, preventing remaining pilot participants who legitimately elect to retire from receiving lump sum distributions of their Plan benefits until such liquidity shortfall requirement failures are remedied.

50.     Furthermore, in response to their dismissals and receipt of repayment demands, certain Defendants and other former pilot participants and their spouses have initiated, or have threatened to initiate, piecemeal actions against Continental or the Plan in various forums, either contesting the legality of their dismissals or the authority of the Administrative Committee under ERISA to rescind or deny "qualification" of their DROs. These actions and threatened actions risk inconsistent outcomes for the Plan and persons who participated in the fraudulent scheme and sham transactions described herein and further dissipation and waste of Plan assets as well as judicial resources unless this Court grants the declaratory and other relief Plaintiffs request in this action. Thus, an actual controversy exists with respect to each cause of action asserted against each Defendant herein which is ripe for this Court's determination.[5]

51.     Thus, Continental and the Administrative Committee now must choose between (1) fulfilling their fiduciary duties to all Plan participants and beneficiaries by pursuing equitable restitution of the fraudulently obtained lump sum distributions in order to recover assets belonging to the Plan and to deter similar anticipated future conduct on the part of others, or (2) passively allowing the Defendant-Pilots and Defendant-Spouses to benefit from their deceptive and manipulative scheme to the detriment of the Plan and its other participants and beneficiaries.

---

[5] Defendants Glenn Brown and Betsy Brown recently have filed a related civil action in this Court (No. 4:09-cv-01148), but neither the Plan nor its fiduciaries who bring this action are parties to that case.

Plaintiffs cannot knowingly allow the latter to occur – clearly their fiduciary obligations under ERISA require that Plaintiffs respond to known, fraudulent activity in order to protect the Plan and its participants and beneficiaries. Moreover, if Plaintiffs do not obtain declaratory and other relief from this Court, then other pilot-employees will be encouraged to defraud and manipulate the Plan through similar means as Defendants. The consequence could be a "run on the bank" that would place the Plan in jeopardy of no longer being able to pay lump sum distributions to other pilot participants.

52.     Both ERISA and the governing documents of the Plan compel Continental and the Administrative Committee to act as responsible fiduciaries with regard to Plan assets – both in protecting the Plan itself and as to the rights of all Plan participants and beneficiaries – including, importantly, the current pilot Plan participants and beneficiaries who have <u>not</u> engaged in the deception and wrongful activity described herein. Thus, judicial intervention is necessary and appropriate at this time, under these circumstances, in order that Plaintiffs may fulfill their fiduciary duties as related to the improper receipt of benefits by the Defendants as described herein. Defendant-Pilots' and Defendant-Spouses' conduct, left unabated, will subject the Plan and Plan participants to future harm and injury in the absence of equitable recovery of the wrongfully obtained funds and the future avoidance of such improper payments.

53.     Federal courts, in construing the enforcement provisions of ERISA, have confirmed that the statute empowers plan fiduciaries to bring actions to recover amounts erroneously paid to, or improperly received by, plan participants, beneficiaries or others, including all gains and earnings on those amounts while they are improperly held, as a result of fraud or other wrongful conduct. In cases such as the one brought here, decisional law instructs that an action by plan fiduciaries against participants and beneficiaries under Section 502(a)(3) is

the appropriate mechanism for enforcing the fiduciary duty provisions of ERISA and the Plan.[6]

54.     An actual and clear controversy has arisen and now exists between Plaintiffs and Defendant-Pilots and Defendant-Spouses concerning their respective rights and duties.

## V.
## FIRST CAUSE OF ACTION: EQUITABLE RELIEF – CONSTRUCTIVE TRUST

55.     Plaintiffs adopt and incorporate by reference the allegations of Paragraphs 1 through 54 as though set forth herein in full.

56.     Defendant-Pilots and Defendant-Spouses are in possession and/or control of certain Plan assets that they have no authority to hold and which belong to the Plan.

57.     As fiduciaries of the Plan, Continental and the Administrative Committee must take affirmative steps to ensure that overpaid benefits due to improperly timed lump sum distributions, together with gains or earnings thereon, are recovered.

58.     There is a risk that Defendants will deplete and/or dispose of the overpaid benefits without the intervention of this Court.

59.     Plaintiffs are entitled to have a constructive trust imposed on the overpaid benefits in possession and/or control of Defendants to preserve those monies for recovery by the Plan in accordance with ERISA and Section 9.22 of the Plan.

---

[6] *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361, 369, 126 S.Ct. 1869, 1873, 1878 (2006) (holding that the plaintiff-fiduciary's attempt to recoup funds under an ERISA plan was the type of "appropriate equitable relief" provided for under section 502(a)(3) of ERISA); *Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 253, 120 S.Ct. 2180, 2191 (2000) (holding that action for restitution of ill-gotten plan assets qualifies as "appropriate equitable relief" under section 502(a)(3)); *Blue Cross and Blue Shield of Ala. v. Weitz*, 913 F.2d 1544,1548 (11th Cir. 1990) (granting summary judgment for fiduciary on its 502(a)(3) claim to recoup improper payments, and going further to state that "while suits by fiduciaries against third parties wrongfully in receipt of payments are not at the heart of Congressional purpose in passing ERISA, neither do they contravene that purpose.  On the contrary, it could be argued that allowing such suits would tend to preserve the integrity of ERISA-governed funds, which is consonant with the central goal of ERISA.").

# VI.
## SECOND CAUSE OF ACTION: EQUITABLE RELIEF – EQUITABLE LIEN (EQUITABLE RESTITUTION)

60.　　Plaintiffs adopt and incorporate by reference the allegations of Paragraphs 1 through 59 as though set forth herein in full.

61.　　Additionally, Plaintiffs plead a cause of action for equitable restitution in those situations, if any, where a constructive trust may not be imposed. Defendants who, for example, received overpaid benefits and may have proceeded to personally retain those funds rather than invest them in an identifiable IRA or other investment vehicle are nonetheless subject to the equitable restitution provisions of ERISA § 502(a)(3).

62.　　Therefore, Plaintiffs seek equitable restitution of – including the imposition of an equitable lien against – any overpaid benefits in the possession of Defendants at the time of the filing of this lawsuit which may not be protected through the imposition of a constructive trust.

# VII.
## THIRD CAUSE OF ACTION: DECLARATORY RELIEF

63.　　Plaintiffs adopt and incorporate by reference the allegations of Paragraphs 1 through 62, as though set forth herein in full.

64.　　Plaintiffs seek the following declarations and judgments from this Court, pursuant to 28 U.S.C. § 2201 and Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3):

(a) that the determinations of Plaintiff Administrative Committee, acting in its capacity as fiduciary for the Plan, that each of the DROs served on the Plan by the Defendant-Pilots or Defendant-Spouses was not qualified under 29 U.S.C. § 1506(d)(3)(D) are entitled to deference and subject to judicial review only for abuse of discretion, and were not arbitrary and capricious;

(b) in the alternative, that the determinations of Plaintiff Administrative Committee, acting in its capacity as fiduciary for the Plan, that each of the DROs served on the Plan by the Defendant-Pilots or Defendant-Spouses was not qualified under 29 U.S.C. § 1506(d)(3)(D) were fully supported by the facts and circumstances revealed during the course of Plaintiff's investigations and are affirmed; and

(c) that each of the Defendant-Pilots and Defendant-Spouses owes restitution to the Plan in the respective amounts of the overpayments alleged in this Complaint and determined during the course of discovery.

## VIII.
## FOURTH CAUSE OF ACTION: INJUNCTIVE RELIEF

65. Plaintiffs adopt and incorporate by reference the allegations of Paragraphs 1 through 64, as though set forth herein in full.

66. Plaintiffs' claims for equitable lien/equitable restitution and a constructive trust with respect to the overpayment of benefits hinge upon those funds remaining in Defendants' possession and/or control. If Defendants are permitted to dissipate the overpaid benefits, then their actions will deprive the Plaintiffs as fiduciaries – and the Plan as a whole as it relates to non-Defendant participants and beneficiaries – of any equitable remedy under ERISA, thereby constituting irreparable harm.

67. Section 502(a)(3) of ERISA specifically allows Plan fiduciaries to seek to enjoin any act or practice which violates ERISA or the terms of the Plan. Consequently, Plaintiffs request that the Court enter a preliminary and permanent injunction prohibiting Defendants from dissipating or transferring possession or control of those monies distributed from the Plan pursuant to the DROs until or at such time as this Court enters a final judgment in this matter.

68.     Plaintiffs' request for preliminary and final injunctive relief will preserve the Court's ability to impose final equitable relief in the form of an equitable lien/restitution and a constructive trust, and promotes the public interest of discouraging individuals and entities from violating the intent of ERISA and the qualified plans in which they participate.  Such injunctive relief preserves the status quo until the merits of the controversy can be fully and fairly adjudicated.

## IX.
## FIFTH CAUSE OF ACTION: DECLARATORY RELIEF UNDER ERISA SECTION 510

69.     Plaintiff Continental adopts and incorporates by reference the allegations of Paragraphs 1 through 68, as though set forth herein in full.  Continental seeks a declaration from this Court that its decisions to terminate the employment of those Defendant-Pilots who participated in the fraudulent scheme and sham transactions described herein, and their respective discharges, were not because the Defendant-Pilots had exercised any right under the Plan or under ERISA, for the purpose of interfering with the attainment of any right of Defendant Pilots under the Plan or under ERISA, or in violation of ERISA section 510 on any other ground.

## X.
## ATTORNEYS' FEES

70.     Defendant-Pilots' and Defendant-Spouses' continuing refusal to make restitution of the funds improperly distributed to them, including all gains and earnings on the fraudulently obtained distributions until such time as they were properly payable under Plan provisions, as alleged in this Complaint, has necessitated Plaintiffs' engagement of legal counsel and the initiation of this action.  Plaintiffs therefore request that the Court exercise its discretion under 29

U.S.C. § 1132(g)(1) to award reasonable attorneys' fees for the prosecution of this action upon entry of final judgment.

## XI.
## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that the Court grant the following relief:

71.     Preliminary and final injunctions prohibiting Defendants from dissipating or transferring possession or control of those monies distributed from the Plan pursuant to the DROs until such time as this Court enters a final judgment in this matter and such judgment shall have been satisfied.

72.     Final Judgment declaring:

(a) that the determinations of Plaintiff Administrative Committee, acting in its capacity as fiduciary for the Plan, that each of the DROs served on the Plan by the Defendant-Pilots or Defendant-Spouses was not qualified under 29 U.S.C. § 1506(d)(3)(D) are authorized, valid and correct actions under ERISA which are binding on all Defendants; and

(b)     that each of the Defendant-Pilots and Defendant-Spouses owes restitution to the Plan in the respective amounts of the overpayments as alleged in this Complaint and shown through discovery and other proof.

73.     Final judgment imposing a constructive trust on the overpaid benefits in the possession and/or control of Defendants and ordering the restoration of all such monies, including all gains and earnings on distributions from the Plan from the time such distributions were made until those amounts were properly payable under the terms of the Plan, to the Plan;

74.     Final judgment requiring equitable restitution of – or creating an equitable lien against – any overpaid benefits in the possession of Defendants and ordering the restoration of

all such monies, including all gains and earnings on distributions from the Plan from the time such distributions were made until those amounts were properly payable under the terms of the Plan, to the Plan;

75.     Final judgment declaring that Continental did not violate section 510 of ERISA, 29 U.S.C. §1140, by discharging, constructively discharging, disciplining or taking adverse employment action with respect to those Defendant-Pilots who it determined participated in the fraudulent scheme and sham transactions designed to gain actual or constructive access to their Plan benefits prior to separation from active employment;

76.     An award of attorneys' fees as authorized by 29 U.S.C. § 1132(g)(1); and

77.     For such further relief as the Court deems just and proper.

Respectfully submitted,

__s/ W. Carl Jordan_____
W. CARL JORDAN
State Bar No. 11018800
Federal ID 729
First City Tower, Suite 2500
1001 Fannin
Houston, Texas 77002-6760
Houston, Texas 77002-6760
(713) 758-2258 (Telephone)
(713) 615-5334 (Facsimile)
*cjordan@velaw.com*

**OF COUNSEL**:

**VINSON & ELKINS L.L.P.**

Tara Porterfield
State Bar No. 00797257
Federal ID 21612
First City Tower, Suite 2500
1001 Fannin Street
Houston, Texas 77002-6760
(713) 758-3742 (Telephone)
(713) 615-5875 (Fascimile)
*tporterfield@velaw.com*

ATTORNEYS FOR PLAINTIFFS
THE CONTINENTAL PILOTS RETIREMENT
PLAN ADMINISTRATIVE COMMITTEE
AND CONTINENTAL AIRLINES, INC.

## NOTICE OF SERVICE ON SECRETARIES OF LABOR AND TREASURY

Pursuant to 29 U.S.C. § 1132(h), the undersigned hereby certifies that a copy of the foregoing Plaintiffs' Original Complaint and Application for Declaratory and Injunctive Relief has been served on the Secretaries of Labor and the Treasury by certified mail, with proper postage affixed, as follows:

Ms. Hilda L. Solis
Secretary of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210

Mr. Timothy F. Geithner
Secretary of the Treasury
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220

___s/ W. Carl Jordan_____
Attorney for Plaintiffs